IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| NANCY W.,[1] | ) | |
| | ) | Civil Action No. 7:23-CV-00033 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| MARTIN O'MALLEY,[2] | ) | |
| Commissioner of Social Security, | ) | By: C. Kailani Memmer |
| | ) | United States Magistrate Judge |
| Defendant. | ) | |

Plaintiff Nancy W. ("Nancy") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding her not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g). This case is before the undersigned magistrate judge by referral pursuant to 28 U.S.C. § 636(b)(1)(B). ECF No. 15. As directed by the order of referral, the undersigned now submits the following report and recommended disposition. Neither party has requested oral argument; therefore, this case is ripe for decision.

For the reasons detailed below, I recommend **GRANTING** the Commissioner's Motion for Summary Judgment, ECF No. 13; **DENYING** Nancy's Motion for Summary Judgment, ECF No. 10; **AFFIRMING** the Commissioner's final decision denying Nancy's DIB claim and **DISMISSING** this case from the Court's active docket.

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.
[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Martin O'Malley should be substituted for Kilolo Kijakazi as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

## **STANDARD OF REVIEW**

The court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Nancy failed to demonstrate that she was disabled under the Act.[3] *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (emphasizing that the standard for substantial evidence "is not high"). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro*, 270 F.3d at 176 (quoting *Craig v. Chater*, 76 F.3d at 589). Nevertheless, the court "must not abdicate [its] traditional functions," and it "cannot escape [its] duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch*, 495 F.2d 396, 397 (4th Cir. 1974). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. *Hays v. Sullivan*, 907 F. 2d 1453, 1456 (4th Cir. 1990).

In contrast, remand is appropriate if the ALJ's analysis is so deficient that it "frustrate[s] meaningful review." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (noting that "remand is necessary" where the court is "left to guess [at] how the ALJ arrived at his conclusions"). The ALJ

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period for not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work; instead, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. *See* 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

must sufficiently articulate his findings such that the district court can undertake meaningful review. *See Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016).

## **CLAIM HISTORY**

Nancy filed for Title II DIB on September 30, 2020, with an alleged disability onset date of November 15, 2019. R. 13. Nancy's claims were denied by the Commissioner at the initial and reconsideration level of administrative review. R. 52–58. On April 20, 2022, ALJ Thomas W. Erwin held a telephonic administrative hearing to consider Nancy's claims. R. 27–50. Counsel represented Nancy at the hearing, which included testimony from Nancy and vocational expert Christine Carrozza-Slusarski. *Id*. On April 29, 2022, the ALJ entered a decision analyzing Nancy's claims under the familiar five-step process[4] and denying her request for benefits. R. 10–26.

At the first step, the ALJ found that Nancy had not engaged in substantial gainful activity since November 15, 2019, the alleged onset date. R. 15. At the second step, the ALJ found that Nancy has the following severe impairments: hearing loss and tinnitus with dizziness. R. 16. As to the third step, the ALJ found that Nancy's impairments, either individually or in combination, did not meet or equal a listed impairment. *Id*.

The ALJ concluded Nancy retained the residual functional capacity ("RFC") to perform a full range of work at all exertional levels but with the following nonexertional limitations: "the

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. *Johnson v. Barnhart,* 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); *Heckler v. Campbell,* 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); *Taylor v. Weinberger,* 512 F.2d 664, 666 (4th Cir. 1975).

claimant can have no exposure to hazards or unprotected heights; can no more than occasionally perform balancing, stooping, kneeling, crouching, and crawling; can have no more than occasional exposure to vibrations; and can have no more than moderate noise exposure." R. 16–21.

At step four, the ALJ found Nancy is capable of performing past relevant work as a bank teller and institution cook. R. 21. At step five, the ALJ determined that Nancy could perform jobs that exist in significant numbers in the national economy, such as bank statement clerk and mortgage accounting clerk. R. 21–23. Thus, the ALJ concluded a finding of "not disabled" was appropriate. *Id*. Nancy appealed the ALJ's decision, and on November 16, 2022, the Appeals Council denied her request for review. R. 1–7. This appeal followed.

## FACTS

### A. Nancy's Background and Testimony

Nancy was born on February 20, 1966. R. 21. She has a high school education and past relevant work as a bank teller and institution cook. R. 21–22. At the April 20, 2022 hearing and throughout the record, Nancy complained of dizziness, ringing in her ears, and hearing loss. R. 37–43. She claimed she could not work because her symptoms have worsened, specifically that the ringing in her ears is constant causing her to get off task and lose concentration. R. 36–37, 39. She testified that she does "not typically" have difficulty finishing tasks, but the ringing in her ears makes it harder to concentrate on her task at hand. R. 44.

Nancy further testified that the ringing in her ears keeps her awake at night and that she usually gets three to four hours of sleep. R. 39. She wakes up groggy which causes her to need to lie down for about thirty to forty minutes during the day five days out of the week. R. 39–40. Due to her ears ringing and hearing loss, Nancy testified that she has trouble communicating, but she continues to interact and "get along well" with people. R. 41. However, she claims that she always

4

has to ask people to repeat themselves during conversation because she has issues hearing them talk. *Id*. As for dizziness, Nany testified that she experiences one to three minute dizzy spells about four times a week, mainly when driving. R. 42. Nancy testified that she occasionally would walk up to three miles at a time. R. 35–36.

Nancy stated that her doctors told her that there was no treatment for her conditions, and she needed "to learn to live with it." *Id*. Nancy testified that she had not been to the doctor since her last appointment in March 2020 due to the COVID-19 pandemic and because she did not want to accrue medical bills if there was no treatment. *Id*.

**B. Medical Treatment**

In rendering his decision, the ALJ reviewed medical records from two office visits at Blue Ridge Ear, Nose, Throat, and Plastic Surgery ("Blue Ridge ENT"). *See* R. 258–76.

On April 19, 2018, Nancy saw Dr. Cline at Blue Ridge ENT presenting with a complaint of tinnitus, characterized as "ringing" in her right ear. R. 273. Nancy reported she experienced associated disequilibrium, but no ear discharge, hearing loss, nausea, or vomiting. *Id*. Nancy also reported that she had surgery on her right ear "10+ years ago" for otosclerosis and that she "jumped due to pain" during the surgery. *Id*. Since the surgery, Nancy reported that her hearing did improve, but that she has experienced ringing in her right ear that was worsening, along with intermittent dizziness when she drives or walks. *Id*. Nancy further clarified that she did not experience vertigo immediately following the surgery, and that the severity of her tinnitus fluctuates. R. 274.

During examination, Nancy was noted to be alert, cooperative, not in acute distress, oriented in person, place and time, and exhibited a normal voice. R. 273. Upon examination of her ears, it was noted that there was no impaction or inflammation in either ear, but the Rinne Test was non-reversing in the right ear. *Id*. During the neurologic examination, it was noted that the

5

eighth cranial nerve was positive for hearing impairment bilaterally. *Id*. The results from the audiogram/tympanogram were consistent with bilateral sensorineural hearing loss. R. 274.

The medical assessment included right-sided tinnitus and sensorineural hearing loss. *Id*. As for the right-sided tinnitus, it was recommended that Nancy participate in a comprehensive hearing test and use a sound machine to aid in masking tinnitus. *Id*. Nancy understood, agreed, and claimed she wished to proceed with further testing. *Id*. As for hearing loss, the option of a hearing aid evaluation was discussed, and Nancy understood, agreed, and claimed she would consider the option. *Id*. There is no evidence in the record that Nancy followed these recommendations.

On March 17, 2020, Nancy saw Dr. Cline at Blue Ridge ENT presenting with a complaint of "blocked" right ear with associated decrease in hearing that she attributed to something that happened the previous Sunday. R. 261. She further reported that she was experiencing ringing in both of her ears but it was not a new symptom. *Id*. She denied hearing changes associated with her tinnitus. R. 262. She also stated that she started to feel dizzy two days prior and it worsened when she changed positions in bed. R. 261.

During examination, Nancy was noted to have decreased hearing and ringing in the ears, but her other systems were normal. R. 261–62. Neurologic testing of the eighth cranial nerve was positive for hearing impairment bilaterally. R. 262. The medical assessment included hearing loss in both ears, bilateral tinnitus, and benign paroxysmal positional vertigo. *Id*. Dr. Cline advised Nancy that he recommended an updated hearing test and encouraged her to proceed with a hearing aid evaluation stating that a "hearing aid would benefit her and would likely improve her tinnitus." *Id*. Dr. Cline also performed a right middle ear injection and indicated that he would consider an additional injection after re-evaluating in one week. *Id*. He recommended the updated hearing test occur in two weeks and would consider at that time whether an MRI of the internal auditory canal

was recommended. *Id*. There is no evidence in the record that Nancy followed these recommendations.

### C. Medical Opinion Evidence

On February 5, 2021, Dr. David Bristow, medical consultant with Disability Determination Service, determined that Nancy's hearing loss and obesity were severe impairments, but her vertiginous syndromes and other disorders of the vestibular system were not severe impairments. R. 52–57. Dr. Bristow opined that Nancy had no manipulative or visual limitations, but could never climb ladders, ropes, or scaffolds; could frequently climb ramps and stairs; could frequently balance, stoop, kneel, crouch, and crawl; had "limited" hearing in the right ear; and avoid concentrated exposure to noise and hazards. *Id*.

On June 14, 2021, Dr. Gene Godwin, medical consultant with Disability Determination Service, determined that Nancy's hearing loss and vertiginous syndromes and other disorders of the vestibular system are severe impairments, but her obesity is not a severe impairment. R. 59–65. Dr. Godwin opined that Nancy could perform work at all exertional levels, but could never climb ladders, ropes, or scaffolds; could frequently climb ramps and stairs; could occasionally balance, stoop, kneel, crouch, and crawl; had "limited" hearing in the right ear; should avoid concentrated exposure to noise and vibration; and should avoid even moderate exposure to hazards. *Id*.

## **ANALYSIS**

Nancy alleges that the Administrative Law Judge ("ALJ") erred in his assessment of her physical impairments, RFC finding, and subjective allegations, claiming the ALJ's assessments are not supported by substantial evidence. *See* ECF No. 11.

I.      **ALJ's Assessment of Nancy's Physical Impairments and RFC Finding**

Nancy argues that the ALJ's conclusion that she can perform a full range of work at all exertional levels but with certain nonexertional limitations is not supported by substantial evidence. Nancy argues that the ALJ did not conduct a function-by-function analysis and failed to assess her ability to sustain work activities on a regular basis for an 8-hour day, including the need to lie down during the day or take breaks. ECF No. 11, 6–8. Nancy also claims that the ALJ failed to properly consider her bilateral hearing loss and its impact on her RFC, failed to explain how the RFC findings address or accommodate her episodes of dizziness, and failed to explain why the RFC does not include any limitations regarding interacting with others. *Id*. Lastly, Nancy argues that the ALJ's RFC determination is "very cursory" and that he failed to build a logical bridge between the evidence and his RFC findings. *Id*. The Court disagrees with Nancy's arguments and finds that substantial evidence supports the ALJ's RFC.

The ALJ is required to develop an adequate RFC that accounts for the work activities the claimant can perform given the physical or mental impairments affecting her ability to work. Importantly, the ALJ must explain the conclusions reached and explain any record evidence which contradicts the RFC determination. *See* SSR 96-8P, 1996 WL 374184 (S.S.A. July 2, 1996). The ALJ is instructed to cite specific medical facts and non-medical evidence supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8P, 1996 WL 374184, at *7.

In *Mascio v. Colvin*, the Fourth Circuit rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second

8

Circuit that " '[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.' " *Mascio*, 780 F.3d at 636 (citing *Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013)). The Fourth Circuit "held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weightlifting abilities." *Newcomb v. Colvin*, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

The ALJ found that Nancy's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Nancy's] statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." R. 18. The ALJ discussed, in detail, Nancy's symptoms, her resulting limitations, the medical evidence, medical opinions, Nancy's testimony, her credibility and conflicting medical evidence. R. 16–21. Even with such limited evidence in the record, the ALJ engaged in a lengthy and comprehensive analysis regarding Nancy's RFC. *Id*. Thus, the ALJ's decision includes the required narrative description under SSR 96-8p and contains sufficient information to allow this Court to engage in a meaningful review.

The ALJ acknowledged Nancy's complaints and symptoms regarding her hearing loss, ringing in her ears, and dizziness, but explained that the medical evidence reflected a limited and conservative treatment course. R. 19. The ALJ noted that Nancy had no documentation of medical treatment around the time that she allegedly became disabled in December 2019, which is inconsistent with the fact that she stopped working due to her conditions, and no further treatment

following March 2020. *Id*. Further, Nancy claimed that her doctors told her that there was no treatment for her conditions, yet the ALJ acknowledged that treatment records indicated several possibilities for evaluation and treatment, including using a sound machine to aid in masking her tinnitus, further ear injections, updated hearing testing, consideration of hearing aids, etc. *Id*.

Nancy claims the ALJ failed to consider her hearing loss or to limit her ability to communicate with others without sufficient explanation. Contrary to Nancy's argument, the ALJ specifically acknowledged that the medical evidence reflected that she did not have difficulty communicating during encounters and that she observed to be alert, cooperative, and in no acute distress, with a normal voice. R. 19. The ALJ further considered Nancy's allegations regarding her activities of daily living in that she denied problems getting along with others, and reported "no real changes" in her social activities since her conditions began. R. 19–20.

Further, as for her complaints of dizziness, the ALJ considered Nancy's statements that she gets dizzy "at times" making it hard to walk, but she reported that she was able to walk three miles without rest during her function report in February 2021. *Id*. As for the alleged need to take breaks or lie down due to a lack of sleep, the ALJ considered that although she alleged difficulty sleeping, she did not include in her function report that needed to lie down during the day – only upon questioning by her attorney at the hearing. *Id*.[5]

To accommodate Nancy's impairments, the ALJ concluded Nancy could perform a full range of work with non-exertional limitations, including no exposure to hazards or unprotected heights, occasional balancing, stooping, kneeling, crouching, and crawling, moderate noise exposure, and occasional exposure to vibrations. R. 16.

---

[5] The ALJ also reviewed and analyzed the state agency physician opinions in determining Nancy's RFC. R. 20–21. Nancy does not raise an issue with the ALJ's conclusions and weight given to each opinion. Thus, the Court will not engage in a lengthy discussion as to the persuasiveness given to each opinion by the ALJ. However, the Court finds substantial evidence exists to support the ALJ's conclusions regarding the medical opinion evidence.

In sum, the ALJ discussed Nancy's symptoms, her resulting limitations, the medical evidence, medical opinions, Nancy's testimony, her credibility, and conflicting medical evidence. Thus, the ALJ satisfied the requirement to create a narrative discussion that builds an accurate and logical bridge from the evidence to his conclusions. Accordingly, the Court finds that Nancy's RFC is supported by substantial evidence.

## II. ALJ's Assessment of Nancy's Subjective Allegations

Nancy argues that the ALJ's assessment of her subjective allegations is not supported by substantial evidence. *See* ECF No. 11, at 8–14. Nancy contends that the ALJ ignored or minimized several pieces of evidence from the record and that the ALJ failed to qualify the extent to which Nancy performed daily activities. *Id*.

An ALJ must assess a claimant's subjective complaints about the extent of her functional limitations considering the objective medical evidence and other factors, including his treatment history, medications, work history, and daily activities. 20 C.F.R. §§ 404.1529(c), 416.929(c). He must engage in a two-step process in which he first determines whether there is an underlying medically determinable mental or physical impairment that could reasonably be expected to produce the claimant's pain or other symptoms, then the ALJ must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's work-related activities. 20 C.F.R. §§ 404.1529(b)–(c), 416.929(b)–(c). In making this determination, the ALJ must "examine the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*. An ALJ's assessment of the credibility of a claimant's subjective complaints are afforded a high level of deference on review,

11

as the Fourth Circuit has proclaimed such assessments are "virtually unreviewable" on appeal. *Darvishian v. Geren*, 404 F. App'x 822, 831 (4th Cir. 2010).

The ALJ found after consideration of the evidence that Nancy's impairments could reasonably be expected to cause the alleged symptoms. R. 18. However, the ALJ found that Nancy's allegations concerning the intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical evidence and other evidence in the record. *Id*.

First, Nancy identifies allegations and medical evidence that she believes the ALJ did not consider or incorrectly weighed in his determination, such as the reason why she did not receive medical treatment after March 2020 and her 2018 Rinne test regarding her hearing loss. Such claim is simply incorrect. As outlined in the ALJ's opinion, he specifically considered the medical evidence of record, including Nancy's Rinne test results from 2018, as well as her claimed reason for not seeking additional treatment after 2020, and deemed her relatively limited and conservative treatment course inconsistent with her alleged symptoms. R. 19. Further, simply inferring that the ALJ did not discuss certain evidence as completely as desired, without more, is not sufficient grounds for remand.

Nancy also argues that the ALJ's assessment of her activities of daily living is deficient because he did not acknowledge "the extent to which [she] performed the activities" and "ignored other significant testimony." ECF No. 11, at 10. In support of this argument, Nancy cites to *Brown v. Comm'r Soc. Sec.*, 873 F.3d 251, 269–70 (4th Cir. 2017); *Arakas v. Comm'r Soc. Sec.*, 983 F.3d 83, 100 (4th Cir. 2020) and other similar cases in the Fourth Circuit. In *Arakas*, the Court found that the ALJ's assessment regarding the claimant's daily activities failed to account for "significant other testimony" from the claimant that was at odds with the ALJ's conclusion. *Arakas*, 983 F.3d at 100. In doing so, the Court determined that the claimant's subjective allegations and activities

of daily living were consistent. *Id*. This error is not present in this case. The ALJ walked through Nancy's daily activities, as well as her allegations of her symptoms, and came to the reasonable conclusion that her daily activities reported in February 2021 suggest a lesser degree of functional loss than generally alleged. R. 19–20.

In *Brown*, the Fourth Circuit concluded that the ALJ committed numerous errors, including failing to acknowledge the extent of the activities of daily living, stating:

> With respect to the first reason for the adverse credibility finding, the ALJ noted that Brown testified to daily activities of living that included "cooking, driving, doing laundry, collecting coins, attending church and shopping . . . The ALJ did not acknowledge the extent of those activities as described by Brown, e.g., that he simply prepared his meals in his microwave, could drive only short distances without significant discomfort, only occasionally did laundry and looked at coins, and, by the time of the second ALJ hearing, had discontinued regular attendance at church and limited his shopping to just thirty minutes once a week. Moreover, the ALJ provided no explanation as to how those particular activities—or any of the activities by Brown—showed that he could persist through an eight-hour workday.

873 F.3d at 263. Here, unlike in *Brown*, the ALJ's assessment shows he understood Nancy's limits in completing her activities of daily living. *See* R. 19–20. The ALJ specifically acknowledges that Nancy participates in her hobbies and interests "except sometimes [when she] get[s] dizzy and can't do them." *Id.* He also identified that Nancy testified that she had difficulty sleeping due to her symptoms. *Id*.

Further, unlike in *Brown*, the ALJ pointed to more than Nancy's daily activities to discount her alleged symptoms, including a detailed accounting of her medical records, as well as the opinions of the state agency physicians. R. 18–21. The ALJ noted that Nancy's allegations were only partially consistent with the medical evidence, in that she had some evaluation and treatment for her symptoms. For example, Nancy testified that her doctors told her that nothing could be done for her symptoms, yet treatment records indicated that several possibilities remained for both

13

evaluation and treatment, such as using a sound machine to aid in masking her tinnitus, further ear injections, updated hearing testing, consideration of hearing aids, etc. R. 19. The ALJ also weighed the state agency physician opinions finding the appropriate level of persuasiveness in comparing the opinions to Nancy's allegations, her medical records, and other evidence in the record. In doing so, the ALJ built an accurate logical bridge between the evidence and his conclusion that was missing in *Brown*.

In sum, the ALJ considered Nancy's allegations regarding her symptoms of dizziness, hearing loss, and tinnitus and crafted an evidence-based assessment of her abilities and limitations through review of the other evidence in the record. A reviewing court gives great weight to the ALJ's assessment of a claimant's statements and should not interfere with that assessment where the evidence in the record supports the ALJ's conclusions. *See Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984). Accordingly, the Court concludes that the ALJ supported his analysis of Nancy's subjective complaints with substantial evidence, and that Nancy can perform work at the level stated in the ALJ's opinion.

## CONCLUSION

For the above reasons, I recommend **GRANTING** the Commissioner's Motion for Summary Judgment, ECF No. 13; **DENYING** Nancy's Motion for Summary Judgment, ECF No. 10; **AFFIRMING** the Commissioner's final decision denying Nancy's DIB claim and **DISMISSING** this case from the Court's active docket.

## Notice to Parties

Notice is hereby given to the parties of the provisions of 28 U.S.C. § 636(b)(1)(C):

Within fourteen days after being served with a copy [of this Report and Recommendation], any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or

specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

Failure to file timely written objections to these proposed findings and recommendations within 14 days could waive appellate review. At the conclusion of the 14-day period, the Clerk is directed to transmit the record in this matter to the presiding District Judge.

The Clerk shall serve certified copies of this Report and Recommendation on all counsel of record.

Entered: February 16, 2024

C. Kailani Memmer
United States Magistrate Judge