IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| NANCY W., ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:23-cv-00033 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| MARTIN O'MALLEY, ) | By:   Hon. Thomas T. Cullen |
| Commissioner of Social Security, ) | United States District Judge |
| ) | |
| Defendant. ) | |

This social security disability appeal was referred to the Honorable C. Kailani Memmer, United States Magistrate Judge, under 28 U.S.C. § 636(b)(1)(B) for proposed findings of fact and a recommended disposition. Judge Memmer filed a report and recommendation ("R&R") on February 16, 2024, recommending that this court deny Plaintiff Nancy W.'s ("Nancy") motion for summary judgment, grant the Commissioner of Social Security's ("Commissioner") motion for summary judgment, and affirm the Commissioner's final decision. Nancy filed objections to the R&R, to which the Commissioner did not respond, making this matter ripe for the court's consideration. For the reasons discussed below, the court will overrule Nancy's objections, adopt Judge Memmer's R&R in its entirety, and grant the Commissioner's motion for summary judgment.

**I.   BACKGROUND**

On September 30, 2020, Nancy filed an application for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401–434 (the "Act"). (R. 171 [ECF No. 6].) In her application, Nancy alleged that she had been disabled since November 15, 2019.

(*Id.*) She asserted that hearing problems and attendant health issues prevented her from working. (*Id.* 215.)

The Commissioner denied Nancy's claims at the initial and reconsideration levels of administrative review. (*Id.* 57, 64.) Nancy then requested a hearing before an administrative law judge ("ALJ"), and on April 20, 2022, ALJ Thomas W. Erwin held a telephonic hearing to consider Nancy's claims. (*See id.* 27–50.) Counsel represented Nancy at the hearing, during which the ALJ heard testimony from Nancy and a vocational expert. (*Id.*) In a written decision nine days later, the ALJ determined that Nancy was not disabled within the meaning of the Act from November 15, 2019, through the date of his decision. (*Id.* 13–23.)

The ALJ found that Nancy had "not engaged in substantial gainful activity" since her alleged disability-onset date and suffered from "the following 'severe' impairments: hearing loss and tinnitus with dizziness." (*Id.* 15–16.) The ALJ determined, however, that these impairments—individually or in combination—did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* 16.)

Next, the ALJ concluded—after carefully considering the entire record—that Nancy had the residual functional capacity ("RFC") "to perform a full range of work at all exertional levels but with the following nonexertional limitations: . . . no exposure to hazards or unprotected heights; . . . no more than occasionally perform balancing, stooping, kneeling, crouching, and crawling; . . . no more than occasional exposure to vibrations; and . . . no more than moderate noise exposure." (*Id.*) Based on this RFC, the ALJ found that Nancy could perform her past relevant work as a bank teller and institution cook and other jobs that exist in sufficient numbers in the national economy, such as a bank statement clerk and mortgage

accounting clerk. (*Id.* 21–23.) Accordingly, the ALJ determined that Nancy was not disabled for purposes of the Act. (*Id.* 23.) The Appeals Council subsequently denied Nancy's appeal, making the ALJ's decision the final decision of the Commissioner. (*Id.* 1.)

On January 13, 2023, Nancy filed suit in this court to challenge the final decision of the Commissioner. (ECF No. 1.) By standing order and under the authority granted in 28 U.S.C. § 636(b)(1)(B), the court referred the case to then-United States Magistrate Judge Robert S. Ballou for consideration; upon Judge Ballou's elevation to District Judge and the selection and appointment of Judge Memmer as the new Magistrate Judge, the case was transferred to Judge Memmer. (ECF Nos. 4, 15.) Both Nancy and the Commissioner filed motions for summary judgment. (ECF Nos. 10, 13.) Judge Memmer then filed an R&R, recommending that the court deny Nancy's motion for summary judgment, grant the Commissioner's motion for summary judgment, and affirm the decision of the Commissioner. (R&R at 1 [ECF No. 16].) Nancy filed timely objections to the R&R (ECF No. 17), to which the Commissioner did not respond, making the matter ripe for review.

## II. STANDARD OF REVIEW

It is not the role of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet her burden of proving disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In so doing, the court may neither undertake a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). "Where conflicting evidence allows

reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (cleaned up).

Substantial evidence is not a "large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). But it is more than a mere scintilla and somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold is not a high bar. *Id.* If the Commissioner's decision is supported by substantial evidence, it must be upheld. 42 U.S.C. § 405(g); *see, e.g.*, *Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 267 (4th Cir. 2017).

### III. NANCY'S OBJECTIONS

Nancy objects to the R&R's finding that substantial evidence supports the ALJ's decision in this matter.[1] (Pl.'s Obj. at 1 [ECF No. 17].) Her objections fall into two groups. First, Nancy asserts that the ALJ did not sufficiently "explain how he arrived at his RFC findings or explain how they actually address or accommodate plaintiff's severe impairments." (*Id.* at 1–4.) Second, she claims that the ALJ's assessment of her subjective allegations was legally deficient because it did not consider the extent to which she performed her daily activities and was not otherwise supported by substantial evidence. (*Id.* at 4–7.) These arguments are not persuasive.

---

[1] Detailed facts about Nancy's impairments and medical and procedural history can be found in the R&R (ECF No. 16) and administrative transcript (ECF No. 6); they will not be repeated here unless relevant to the objection under consideration.

At bottom, Nancy's objections amount to a basic disagreement with the ALJ's assessment of the record, RFC determination, and ultimate conclusion that she is not disabled under the Act. But even assuming, without deciding, that record evidence also supported her contrary view, that would not justify the court remanding this matter to the Commissioner. *See Johnson*, 434 F.3d at 653. The court's limited role is to determine if the ALJ's decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. As explained below, the ALJ's thorough analysis of Nancy's record and explanations for his findings establishes that substantial evidence supports his decision.

**A.  Objection 1: "The ALJ's Assessment of Plaintiff's Physical Impairments and RFC Findings"**

Nancy contends that the ALJ's decision in the instant matter does not include the requisite narrative discussion and that the magistrate judge "erred in concluding the ALJ's decision . . . contains sufficient information to allow . . . meaningful review." (Pl.'s Obj. at 1.) As part of this objection, Nancy asserts that the ALJ's decision made certain evidentiary errors. The court first reviews the evidentiary argument, then turns to Nancy's broader contention about the ALJ's narrative.

**1.  Evidentiary Argument**

Although Nancy does not cite any case law to support her first objection, her evidentiary argument appears based on the rule that an ALJ cannot selectively cite evidence that bolsters his conclusion, while ignoring evidence that cuts the other way. *See Arakas v. Comm'r of Soc. Sec. Admin.*, 983 F.3d 83, 100 (4th Cir. 2020). Nancy argues that the ALJ's opinion selectively cited and misconstrued the record evidence in the following ways:

1. It excluded the fact that Nancy's social activities were with her family and "implied [she] was engaging in robust social activities."

2. It mischaracterized Nancy's walking ability and ignored that she has dizzy spells, which make it difficult for her to walk at times.

3. It implied that Nancy invented the need to lie down at the ALJ hearing.

(Pl.'s Obj. at 1–3.) The record belies these assertions.

On the first point, the ALJ noted that Nancy's activities included "spending time with family" and did not imply that she engaged in robust social activities. (R. 19.) Instead, his decision simply recited activities that Nancy herself listed in her function report. And the decision even excluded some of Nancy's reported activities that indicate she is *more* socially active than the ALJ suggests. (*Compare id.* 19 (noting that Nancy's hobbies include "going to football games," "shopping," and "spending time with family"), *with id.* 225 (noting the same social activities, along with "eating out" and "get[ting] together with friends several times a month").)

The ALJ also did not mischaracterize Nancy's walking ability or ignore her dizzy spells. He explicitly considered Nancy's qualifying statements that she "has dizzy spells about four times per week . . . for about one to three minutes"; can no longer "walk three miles at once, as she previously reported"; and has "difficulty with walking when feeling dizzy." (*Id.* 17, 20.)

Similarly, the ALJ's decision did not imply that Nancy invented a need to lie down at the hearing. In discussing Nancy's function report, the opinion stated the following: "She reported difficulty with sleep, but did not mention needing to lie down during the day as she indicated at the hearing." (*Id.* 19.) That statement does nothing more than accurately

summarize the record, and it is disingenuous to suggest otherwise. (*Compare id.* 39–40 (hearing transcript), *with id.* 221–28 (function report).)

Accordingly, the ALJ did not selectively cite or misconstrue information from the record, and the court rejects Nancy's argument on this ground. *Contra Arakas*, 983 F.3d at 100 (ruling that an ALJ selectively cited evidence when he excluded the plaintiff's qualifying statements about the extent of her activities).

2. **Narrative Argument**

Nancy's broader argument in her first objection is that the ALJ's opinion does not comply with SSR 96-8p's narrative-discussion requirements for determining her RFC and assessing her physical impairments. SSR 96-8p was intended to "state the Social Security Administration's policies and policy interpretations regarding the assessment of residual functional capacity (RFC) in initial claims for disability benefits under titles II and XVI" of the Act. SSR 96-8p, 1996 WL 374184, at *1. "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," meaning "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.* As it relates to Nancy's objection, SSR 96-8p requires that an ALJ's RFC determination include

> a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material

> inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

*Id.* at *7. In line with these requirements, an ALJ's decision must "build an accurate and logical bridge from the evidence to [its] conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted).

Nancy contends that the ALJ did nothing more than summarize the record evidence then state his findings without building an accurate and logical bridge from the evidence to his conclusions. (Pl.'s Obj. at 3–4.) The court disagrees. As discussed below, the ALJ provided a detailed evaluation of the objective medical evidence and non-medical evidence in the record. The ALJ then logically tied that evidence to his findings that Nancy's medically determinable impairments could cause her alleged symptoms, but that she still had the RFC to perform a full range of work, subject to certain nonexertional limitations.

To determine the RFC, the ALJ first reviewed Nancy's medical history, including her April 2018 and March 2020 visits to an ear, nose, and throat ("ENT") specialist because of hearing issues and disequilibrium. (R. 18–19.) The ALJ cited the various tests and diagnoses from those visits, while noting how Nancy's medical providers described her as "alert, cooperative, and in no acute distress, with a normal voice." (*Id.*) His decision also acknowledged Nancy's claim that "nothing can be done" for her symptoms, but found that it was contradicted by the ENT's advice that a hearing aid—along with further testing and treatment—could help. (*Id.* 19.) Moreover, the ALJ considered the "relatively limited and conservative treatment course" and lack of "documentation of medical treatment around the time that [Nancy] allegedly became disabled." (*Id.*)

Far from stopping there, the ALJ went on to examine, in detail, the other evidence in Nancy's record starting with her daily activities. As the ALJ described, Nancy's activities included taking care of her dogs, completing basic chores around her house, fixing dinner, and driving. (*Id.*) The ALJ further discussed Nancy's hobbies and interests—"going to football games, shopping, cooking, and spending time with family"—and that she reported "no changes" to these activities since her symptoms began. (*Id.* 19–20.) Cognizant of Nancy self-reported limitations, however, the ALJ also noted her statements at the hearing about needing to lie down during the day and occasional dizziness while walking. (*Id.*)

Finally, as required by 20 C.F.R. § 404.1520c, the ALJ considered the two medical opinions in Nancy's record from state-agency medical consultants at the reconsideration and initial levels of review. Nancy does not object to the ALJ's narrative discussion and conclusions from each of these medical opinions. The court reviews them, however, because they further demonstrate that the ALJ's opinion is supported by substantial evidence.

The ALJ found the reconsideration-level assessment to be partially persuasive. Specifically, the ALJ explained that the consultant's determination about Nancy being able to perform work at all exertional levels was supportable and consistent with other record evidence. (*Id.* 20.) The ALJ also agreed with the consultant that, for Nancy's safety, she could not be exposed to hazards or unprotected heights. (*Id.*) But the ALJ rejected the consultant's restriction on climbing because it was inadequately explained; inconsistent with Nancy's "lack of objective deficits [that] might restrict this activity"; and inconsistent with her function report, which did not identify problems with stair climbing. (*Id.*) The ALJ also did not adopt

"'limited' hearing on the right" as a restriction, finding that it was "not well explained or quantified" and inconsistent with Nancy's communications with medical providers. (*Id.*)

Unlike the reconsideration-level assessment, the ALJ found the initial-level assessment, which stated that Nancy was limited to medium-exertion work, unpersuasive. The ALJ discounted this assessment because the consultant who performed it did not explain how a medium exertion level squared with Nancy's impairments or her reported ability to walk three miles without stopping. (*Id.* 21.) The ALJ also viewed the assessment as inconsistent with the other evidence in the record, including Nancy's lack of exertional limitations in her encounters with other people. (*Id.*)

As part of his recitation of the evidence, the ALJ built an accurate and logical bridge from that evidence to his RFC conclusion. For example, the ALJ emphasized Nancy's limited course of medical treatment—despite recommendations to alleviate her symptoms—as undermining her claims about the intensity of her symptoms and how they impacted her ability to work. (*Id.* 19.) That is a reasonable and supportable conclusion. *See* 20 C.F.R. § 404.1529(c)(3)(v) (stating that an ALJ will consider a claimant's treatment history in evaluating how her symptoms limit her capacity to work); *Stitely v. Colvin*, 621 F. App'x 148, 151 (4th Cir. 2015) (citing *Wall v. Astrue*, 561 F.3d 1048, 1068–69 (10th Cir. 2009)) (noting that "conservative medical treatment undermines allegations of disabling symptoms"); *see also Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) (Luttig, J., concurring) (discussing how an inconsistency between a claimant's allegations and the treatment sought is "probative of the claimant's credibility"). Additionally, the ALJ explained how his RFC conclusion that Nancy could perform work at all exertional levels was also based on other evidence, including the

review-level assessment's similar finding and Nancy's relatively normal daily activities and interactions with others. (R. 20.) He next drew an accurate and logical bridge from the evidence to the nonexertional limitations, explaining that the evidence supports some nonexertional limitations to avoid exacerbating her symptoms and as safety precautions at work, but not other nonexertional limitations that were contradicted by Nancy's own reports (*e.g.*, climbing). (*Id.* 19–20.)

One of the few specific assertions Nancy raises in connection with this narrative objection is that the ALJ's decision does not "explain how [her] ability to interact one[-]on[-]one with a medical provider for a brief period of time translates" to her being able to perform a full-time job without exertional limitations. (Pl.'s Obj. at 2.) This argument, however, reads the ALJ's decision too narrowly. As discussed above, Nancy's ability to interact with medical providers was only *one* part of the ALJ's assessment of her physical impairments and RFC. And the contention that an ALJ could have offered a more thorough explanation for one piece of evidence does not mean that the ALJ's otherwise thorough and well-reasoned opinion should be disturbed. *See Dunn v. Colvin*, 607 F. App'x 264, 276 (4th Cir. 2015); *see also Reid v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Russell v. Chater*, No. 94–2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995)) (noting that the ALJ is not required to undertake an "exhaustive point-by-point discussion").

Overall, the court finds that the ALJ's narrative discussion—and his conclusions based on the evidence in the record—about Nancy's physical impairments and RFC are supported by substantial evidence. Nancy's first objection is therefore overruled.

**B.    Objection 2: "The ALJ's Assessment of Plaintiff's Subjective Allegations"**

Nancy's second objection takes aim at the R&R's determination that the ALJ's assessment of her subjective allegations was supported by substantial evidence. Similar to her first objection, Nancy argues here that the ALJ did not consider certain evidence in assessing her subjective allegations or explain how her daily activities supported that she could work full time. (*See* Pl.'s Obj. at 4–7.)

**1.    Evidentiary Argument**

Starting again with her evidentiary argument, Nancy states that the ALJ "failed to consider her allegations that the constant ringing in her ears makes it difficult for her to concentrate and finish tasks and that it is difficult for her to follow spoken instructions and she needs to have them repeated several times." (*Id.* at 4.) She next contends that the ALJ overlooked the fact that her doctor's recommendation for a repeat injection was contingent on the first injection working and "other [treatment] recommendations were merely potential possibilities." (*Id.* at 6.) According to Nancy, the ALJ also "ignored the possibility that the doctor painted a much more grim picture to plaintiff than what the doctor put in his office note."[2] (*Id.*)

It is well-settled that an ALJ does not need to "specifically refer to every piece of evidence in his decision." *Reid*, 769 F.3d at 865 (citation omitted); *see also Blackwell v. Colvin*, No. 1:14-cv-00085, 2014 WL 7339132, at *6 (W.D.N.C. Dec. 23, 2014) (cleaned up) ("An ALJ

---

[2] In addition to the reasons discussed below, the court rejects this assertion because it is incorrect. The ALJ's decision references Nancy's testimony that a doctor told her "nothing can be done for [her] symptoms" (R. 19, *see* R. 38), demonstrating that the ALJ considered the possibility that what the doctor told Nancy differed from her medical records. Ultimately, however, the ALJ gave more weight to Nancy's medical records than her conflicting testimony when considering her available treatment options and determining her RFC. It is not the court's role to reweigh this conflicting evidence. *See Johnson*, 434 F.3d at 653.

is not tasked with the impossible burden of mentioning every piece of evidence that may be placed into the Administrative Record."). Moreover, the ALJ stated that his findings were made "after careful consideration of the entire record" (R. 16) and "based on the totality of the evidence" (*id.* 21), meaning that he contemplated the information Nancy points to in this objection. Absent evidence to the contrary about the ALJ not actually considering certain items—which Nancy does not muster—the Fourth Circuit dictates that a court should take an ALJ at his word that his decision is based on the entire record. *Reid*, 769 F.3d at 865. The court does so here and is satisfied that the ALJ sufficiently examined the evidence in assessing Nancy's subjective allegations.

### 2. Daily-Activities Argument

As to the ALJ's daily-activities discussion, Nancy argues that it did not consider her qualifying characterizations of those activities or explain how her activities suggest she has the RFC to perform full-time work. These assertions significantly overlap with Nancy's contentions addressed above, and the court finds them equally unpersuasive the second time around.

Nancy argues that remand is appropriate because of the ALJ's "failure to acknowledge the extent to which [she] actually performed [her daily] activities." (Pl.'s Obj. at 5.) She does not provide any examples of limitations that the ALJ ignored in connection with this argument, and it is not the court's job to search through the record to find support for her. *See William T. v. Kijakazi*, No. 7:21-cv-00550, 2023 WL 2644283, at *8 (W.D. Va. Mar. 27, 2023). Nonetheless, based on the court's thorough review of the evidence, Nancy's assertion is incorrect. The ALJ's decision acknowledged the extent to which Nancy performed her daily

activities, recognizing that she reported needing to lie down during the day and, as she concedes in her objection (Pl.'s Obj. at 4), considering the impact of her dizzy spells. (*See* R. 19–20.) Accordingly, Nancy's case is readily distinguishable from the cases she cites in support of this argument—*Brown*, 873 F.3d 251, and *Arakas*, 983 F.3d 83—which the Fourth Circuit remanded because the ALJs in those cases did not discuss restrictions on the claimants' daily activities.

Finally, Nancy argues that the ALJ erred by summarizing evidence of her daily activities but not explaining how that evidence supports the RFC determination and her ability to work "on a sustained basis over the course of an eight hour workday." (Pl.'s Obj. at 4–5.) While the ALJ could have done more in tying his discussion of Nancy's daily activities to his conclusion, his findings were not solely based on her daily activities. The ALJ relied on Nancy's daily activities *in combination with* her medical records and the state-agency medical assessments to assess Nancy's allegations about the severity of her symptoms and then built a logical narrative to the RFC determination. *See supra* section III.A.2. Therefore, substantial evidence supports the ALJ's decision, and the court will overrule Nancy's second objection. *See, e.g.*, *May v. Comm'r of Soc. Sec. Admin.*, No. 9:20-cv-02197, 2021 WL 7286833, at *9 (D.S.C. Oct. 6, 2021), *R&R adopted*, 2022 WL 593957 (D.S.C. Feb. 25, 2022), *aff'd*, No. 22-1493, 2023 WL 2908812 (4th Cir. Apr. 12, 2023) (finding an ALJ's decision was supported by substantial evidence despite infirmities in its discussion of the claimant's daily activities); *Tara H. v. Kijakazi*, No. 7:21-cv-00592, 2023 WL 2733412, at *10 (W.D. Va. Mar. 31, 2023).

## IV. CONCLUSION

For the foregoing reasons, the court finds no error in the magistrate judge's conclusion that the ALJ's decision is supported by substantial evidence. As such, Nancy's objections will be overruled, Judge Memmer's R&R will be adopted in its entirety, Nancy's motion for summary judgment will be denied, and the Commissioner's motion for summary judgment will be granted.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 25th day of March, 2024.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE